FANNON *v.* LeBEAU.

JOINT ADVENTURES — FRAUD—ACCOUNTING—WITHHOLDING KNOWLEDGE OF PENDING SALE.

    In a suit for an accounting for the proceeds of the sale of a land contract, allegations that defendant wrongfully withheld from plaintiff knowledge that negotiations were pending for the sale of said contract, which resulted in a profitable sale after defendant had purchased plaintiff's one-half interest therein, *held*, not sustained by the proofs.

Appeal from Wayne; Miller (Guy A.), J.    Submitted February 1, 1927.    (Docket No. 87.)    Decided April 1, 1927.    Rehearing denied June 6, 1927.

Bill by John J. Fannon against Charles H. LeBeau for an accounting.    From a decree for plaintiff, de-

---

'Joint Adventures, 33 C. J. § 96.

fendant appeals.   Reversed in part and affirmed in part.

*Adelbert H. Lindley* and *Arthur P. Hicks,* for plaintiff.

*Edmund J. Stafford* and *James V. Van Vechten, Jr.* (*Ernest P. La Joie,* of counsel), for defendant.

McDONALD, J.   This bill was filed for an accounting between partners and to recover a one-half interest in the proceeds from the sale of a land contract which the plaintiff claims the defendant is wrongfully withholding from him.   In June, 1923, the defendant LeBeau and one Albert L. Cadieux entered into an agreement to purchase certain land known as the Kelly farm.   In February, 1924, the defendant LeBeau formed a partnership with the plaintiff Fannon to conduct a real estate business in the city of Detroit. Before this partnership was formed LeBeau and Cadieux assigned their interest in the Kelly farm contract to Dalby-Hayes Company.   In April, 1924, LeBeau and Fannon took a re-assignment of the contract from Dalby-Hayes Company for which they paid $5,000, each contributing $2,500 to the purchase price. The assignment was taken in the name of LeBeau, but he recognized the plaintiff's right to a half interest therein, and gave him a separate paper to that effect. Mr. Kelly, the owner of the farm, died and his heirs refused to perform the contract.   For this reason it became very difficult for the vendees to make any disposition of it.   Negotiations to that purpose were carried on unsuccessfully for a few months with various parties.   Mr. Fannon became discouraged. He wanted his money back and asked LeBeau to buy his half interest.   They seemed to have treated the purchase of the Kelly contract as a venture outside of their general partnership business.   LeBeau agreed to pay back to Fannon the $2,500 which he had in-

vested in the venture, and subsequently paid $1,000 to be applied thereon. Some time after this agreement was made, and after the plaintiff had accepted the $1,000 payment, he claims to have learned that, at the time of the agreement, LeBeau was about to conclude or had concluded negotiations with King & O'Hara for a sale of the Kelly contract at a large profit. It is the plaintiff's claim that he had no knowledge that such negotiations were pending or had been concluded, and that the defendant purposely concealed the fact from him; that, in view of the relations between them in the enterprise, the defendant owed him the duty of fully and honestly disclosing all matters within his knowledge which would affect the value of the interest that the plaintiff was selling; that, under the circumstances, the concealment of such facts amounted to a fraud upon the rights of the plaintiff, and entitled him to a decree setting aside the agreement and restoring to him his interest in the contract, or one-half of the profits which the defendant received from the sale to King & O'Hara.

It is the defendant's claim that the negotiations with King & O'Hara were not pending at the time of his agreement to purchase the plaintiff's interest; that the agreement was made on or about the 23d of July, 1924; that his negotiations with King & O'Hara were not begun until about the 20th of August; that the plaintiff had as much knowledge as he had concerning every attempt that had been made to sell their interest in the Kelly contract; that there was no concealment or misrepresentation as to any facts concerning matters which the plaintiff was entitled to know. On the hearing, the circuit judge found the facts to be as the plaintiff claimed, and rendered a decree setting aside the agreement, and granting to the plaintiff a half interest in the profits from the sale to King & O'Hara. The decree also provided for an accounting

of the general partnership business.    From this decree the defendant has appealed.

It is conceded that the issue involves purely a question of fact.    If it be true that, at the time of the agreement between the parties for the sale and purchase of the plaintiff's interest in the Kelly contract, the defendant was carrying on negotiations with King & O'Hara with some prospects of a successful termination, the failure of the defendant to disclose the fact of such negotiations constituted a legal fraud and entitled the plaintiff to the relief prayed for in his bill. The agreement was not in writing and the difficulty is in determining from the testimony the date on which it was made.    The defendant testified that it was about July 23, 1924, and the plaintiff testified that it was some time in the second week of September.    In his opinion the circuit judge finds that they were both in error and determined the date of the agreement to have been about August 15th.    Our examination of the evidence leads us to accept that date as the time when it was actually made.

The next question is whether negotiations with King & O'Hara were pending at that time.    The testimony very definitely fixes August 20, 1924, as the date when King and O'Hara arrived at an understanding with the defendant.    Mr. O'Hara testified that he first talked with the defendant about purchasing the Kelly contract in May, 1924.    At that time he made the defendant a proposition to put up $25,000 to be paid to the Kellys, and to organize a company and give defendant preferred stock for his interest. It was not accepted.    He did not see the defendant again until August 20, 1924.

"*Q.* What was the occasion of your seeing him on the 20th of August?

"*A.* He came into the office with Mr. King and sat down and said, if we wanted to buy the Kelly farm we

would have to put up some cash in addition to the $25,000.

"*Q.* Did you then make him a proposition?

"*A.* Yes, sir."

Mr. King testified that he saw the defendant frequently between May and August 20th, but that no offers or counter offers were made during that time. His talk with the defendant on those occasions was in an effort to persuade him to handle the property through a syndicate. His testimony, like that of Mr. O'Hara, is positive that there were no propositions offered or pending between May and August 20th, but that on the latter date negotiations were renewed and agreement reached. There is no reason for discrediting the testimony of these two men. They were not interested in the litigation and were in no way impeached. Their testimony establishes the fact that, when the plaintiff sold out, some time before August 20th, there was nothing pending between them and the defendant relative to the purchase of the Kelly contract. There is no other evidence that would justify the inference that before the 20th of August the defendant had any reason to believe that he could sell the contract to King & O'Hara. And as bearing on this question, it is a significant fact that the defendant did nothing to induce or persuade the plaintiff to sell. The plaintiff wanted his money back because he thought that the attitude of the heirs rendered a sale of the contract improbable. There was no suggestion from the defendant that he sell and no apparent anxiety to purchase. So far as appears by the record, he bought the plaintiff's interest because the plaintiff insisted on selling. If he had any knowledge of matters that would affect the value of what he was buying from the plaintiff, the evidence does not show it. Our conclusion is that the plaintiff's allegations of fraud are not sustained by the proofs.

In respect to the transaction relative to the Kelly contract, the decree of the circuit court is reversed. It is affirmed as to the accounting of the general partnership business.    The defendant will have costs.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.